IN THE MATTER OF THE APPLICATION OF THE LONG BRANCH AND SEA SHORE RAILROAD COMPANY FOR A STAY OF PROCEEDINGS UNDER THE ACT "FOR THE RELIEF OF CITIZENS ON THE LINE OF ANY RAILROAD THAT HAS OR MAY HEREAFTER FAIL OR NEGLECT TO OPERATE."

1. Where a railroad has ceased to operate for many weeks, and a receiver has been appointed under the "act for the relief of citizens on the line of any railroad that has or may hereafter fail or neglect to operate," the proceedings of the receiver will not be stayed to allow an inquiry into the causes of the failure of the company to operate.

2. When any company of whose property a receiver has been thus appointed shall satisfy the Chancellor of its ability and readiness to operate its road, the receiver will be ordered to deliver it up.

On petition.

*Mr. T. G. Shearman,* (of New York,) for the motion.

*Mr. Gilchrist,* Attorney-General, contra.

THE CHANCELLOR.

By the first section of an act entitled "an act for the relief of citizens on the line of any railroad that has or may hereafter fail to operate," approved February 12th, 1874, it is enacted as follows: "If any railroad company in this state has or may hereafter fail or neglect to run daily trains on any part of its road for the space of ten days, then the Chancellor of this state, upon petition of any citizen of this state, and due proof of the facts, shall speedily appoint a receiver, which said receiver, by order of the Chancellor, shall and he is hereby empowered and required to take possession of all the real and personal property of said company, and to operate said road, and transact the ordinary business thereof, in the transportation of freight and passengers, for such time

as the Chancellor may direct, and all expenses incurred thereby shall be a first lien on all the earnings thereof, prior to any other claim, and the surplus, if any, be distributed as the Chancellor may direct." By the second section, it is enacted, "that whenever the Chancellor shall appoint a receiver of any railroad company, said receiver shall apply all unencumbered personal effects, and all moneys which may be transferred to him at the time of entering upon his duties as such receiver, towards the payment of wages at that time due the employees of said company; and the Chancellor may, from time to time, make such orders as he may deem proper, to equitably carry out the provisions of this section, provided that no such payment shall be made for more than two months wages."

On the 13th of February, 1874, on a petition accompanied by due proof, a receiver was appointed by an order of this court, under the first section, to take possession of and operate certain railroads, among which are those of the Long Branch and Sea Shore, and New Jersey Southern Railroad Companies, and to transact the ordinary business thereof, in the transportation of freight and passengers, until the further order of the Chancellor.

That order directed that all expenses incurred by the receiver in the performance of his duties, should be a first lien on all the earnings of said railroads, prior to any other claim, and that the surplus, if any, should be paid into this court, to abide the order of the court; and that the receiver report to this court, from week to week, an account of the receipts and expenditures attending the operation of said roads, and of the performance of his duties, under the order, and that he should have liberty to apply, from time to time, for instructions, and that, before he enter on the duties of his office, he give bond to the state, with sureties, to be approved of by the Chancellor, in a sum to be approved of by the Chancellor, conditioned that he shall duly and justly perform his duty as such receiver. The Long Branch and Sea Shore Railroad Company apply, by petition, on grounds

which are sufficiently stated hereafter, for an order restraining the receiver from interfering with their property or road, and from collecting or paying out any money belonging to them, and directing him to deliver to them the possession of their rolling stock, so that they may operate their road.

The statute above recited is an enactment for the relief of the inhabitants of this state from the failure of railroad companies to operate their roads. Of the fact that this company had, at the date of the order complained of, ceased to run daily trains on any part of their road for more than ten days, the time fixed in the act, there can be no doubt. It is admitted on this motion. But the company claim that they had neither failed nor neglected to do so within the meaning of the statute, because they allege that their failure to operate their road was attributable not to their default, but to the act of lawless persons, by whom their rolling stock was, by force and without warrant or authority of law, taken out of their possession, and withheld from them with a view to compelling, by that means, the payment of wages alleged to be due to those persons from the New Jersey Southern Railroad Company. They further claim that that stock, while so withheld from them, passed into the hands of the trustees for the first mortgage bond-holders of the last named company, by whom, on the appointment of a receiver for the creditors and stock-holders of that corporation, under the act " to prevent frauds by incorporated companies," it was delivered over to that officer, and that he, or the receiver appointed under the late statute to operate the road, now has it in his possession accordingly. On the part of the petitioners, on whose application the order appointing the last mentioned receiver was made, the truth of these allegations is denied. It is enough to say, on that head, that although many weeks have elapsed since the company were, as they allege, deprived of their property by the hand of lawless force, and although that property has for weeks, as they claim, been in the hands of the trustees, or of the receiver of the New Jersey Southern Railroad Company, they do not appear to have made any

In the matter of the Long Branch and Sea Shore R. R. Co.

effort whatever, whether by application to this court or otherwise, to regain possession of it. Indeed, their position appears to have been that of quiet acquiescence, at least. For weeks past, their road has not been operated, and by reason thereof, and the failure of the New Jersey Southern Railroad Company to operate their road, a very large portion of the inhabitants of the state, dwelling along the line of the roads, have been subjected to very great inconvenience. The statute above recited was passed to meet this great and extraordinary public exigency. By its terms, it is obligatory upon this court to take the measures therein designated, to relieve the public from the effect and consequences of the apparent dereliction of duty on the part of the owners of the roads. The court, in the discharge of the duty thus imposed, has provided for the relief of the public, but it will, whenever the exigency shall have ceased, restore to their owners the railroads and property which, under the statute, it has put into the hands of the receiver. Whenever sufficient reason shall be shown for relieving any railroad from the operation of the order, it will be relieved; but, under the circumstances of this case, I am not willing to stay the application of the statute for an inquiry as to the causes of the failure to operate the road. The public necessity is paramount. When the company shall satisfy me of their willingness and ability to operate their road, it will be delivered up to them.

The motion is denied.